UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MICHAEL BATANJANY, et al.,                          :
                                                    :
                                      Plaintiffs,   :          25-CV-8420 (AT) (RWL)
                                                    :
                    - against -                     :          **ORDER ON MOTION TO SEAL**
                                                    :
CLEAR STREET MANAGEMENT LLC, et al.,                :
                                                    :
                                     Defendants,    :
------------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

This action arises from the resignation of Plaintiffs, registered broker dealers, from their former employer Clear Street Management LLC and its affiliate Clear Street Derivatives LLC (together with other defendant affiliates, "Clear Street"), to become employees at another company, Hidden Road.  Plaintiffs claim that Clear Street and its Chairman, Uriel Cohen, retaliated against them for blowing the whistle on regulatory violations, filed false information about them with regulators, and engaged in other improper conduct.  Defendants contend that Plaintiffs breached their employment agreements and were fired for cause.  Plaintiffs moved for emergency relief.  A preliminary-injunction hearing was held over two days in November 2025 (the "Hearing").[1] The decision on the motion remains pending.

In the meantime, Clear Street seeks to maintain under seal certain information contained in briefing, exhibits, and testimony.  Clear Street characterizes the material that it seeks to protect from disclosure as competitively sensitive, non-public business

---

[1] The Hearing was conducted on November 13 and 20, 2025.  Citations to the Hearing transcript are denoted as "Tr. ___."

information.  (Dkt. 80 at 1.)  Plaintiffs oppose the application, arguing that the information

Clear Street seeks to seal either is already public or is generic, high-level information that

should not be kept from public view.  (Dkt. 82.)  The parties' sealing disputes have been

referred to me.[2]  (Dkt. 162.)  For the following reasons, Clear Street's motion to seal is

DENIED in part and GRANTED in part.

## Material At Issue

The material that Clear Street seeks to seal includes the following:[3]

1.  Exhibits A and B to Clear Street's initial sealing request at Dkt. 80.
    Exhibit A is Clear Street's more detailed letter request, and Exhibit B is
    Plaintiffs' demand letters to Clear Street dated October 3 and 4, 2025.

2.  Hearing testimony about the dollar amounts of Clear Street's overall
    business and its derivatives business, and the percentage of the former
    composed of the latter.

3.  Hearing testimony about the number of Clear Street's clients.

4.  Compensation paid to Plaintiffs and other Clear Street employees as
    mentioned at the Hearing; paragraph 22 of the December 15, 2025
    Declaration of Tania Zivkovic at Dkt. 103-24; and Exhibit A of the
    December 6, 2025 Declaration of Michael Batanjany at Dkt. 95-5.

5.  Hearing exhibits 42, 43, and 43A in their entirety.

6.  Paragraph 92 of the December 11, 2025 Declaration of John DiBacco at
    Dkt. 103-25 attesting to "net spread" pricing data.

7.  Financial terms of service as set forth in Clear Street client service
    agreements at Exhibit 54 at Dkt. 103-16, and Ex. A of the December 6,
    2025 Declaration of Patrick Travers at Dkt. 95-2.

---

[2] The parties' principal filings addressing the sealing disputes appear at Dkts. 80, 82, 109, 113-15, and 161.

[3] Clear Street also sought to seal information about its efforts to pursue an initial public offering.  That issue is now moot because the information at issue was made public months ago.  (Dkt. 109 at 1 (Clear Street letter dated December 19, 2025, stating that "Defendants have withdrawn that portion of their motion as moot").)

8. Testimony about the dollar amount of Clear Street's position, capital, and margin-stress as set forth in paragraph 3 of the December 6, 2025 Declaration of Patrick Travers at Dkt. 95-2.

9. A private home address, personal email address, and personal telephone number in Exhibit 52.

10. Clear Street's brief at Dkts. 145 (sealed in full) and 159 (redacted in part) in opposition to Plaintiffs' motion for civil contempt and sanctions for violating the Court's temporary restraining order.

### Legal Standards

The public has a strong presumptive right to access certain judicial documents, established by the First Amendment, as well as a presumptive right to all judicial documents, established at common law. *Newsday LLC v. County of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013) ("Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law."); *see also United States v. Amodeo*, 71 F.3d 1044, 1048-49 (2d Cir. 1995) (discussing and analyzing the presumption of access under common law).

Determining whether documents may remain under seal despite the presumption of access entails a three-step analysis. *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020). First, the Court determines whether the document is a "judicial document"; that is, "a filed item that is relevant to the performance of the judicial function and useful in the judicial process." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (internal quotation marks and citation omitted); *see also United States v. Greenwood*, 145 F.4th 248, 254 (2d Cir. 2025) ("The common law right of public access turns on whether the document at issue is a judicial document, to which the common law presumption applies").

3

Second, if the document qualifies as "judicial," the Court assesses the weight of the presumption. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) ("Once the court has determined that the documents are judicial documents ... it must determine the weight of that presumption). "The weight of the presumption is a function of (1) the role of the material ... in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts[.]" *Bernstein*, 814 F.3d at 142 (internal quotation marks and citation omitted).

Third, the Court balances competing considerations – for instance, the "danger of impairing law enforcement or judicial efficiency," or "the privacy interests of those resisting disclosure" – against the presumption of access. *Amodeo*, 71 F.3d at 1050. Ultimately, sealing may be afforded if the Court finds that doing so is "essential to preserve higher values and is narrowly tailored to serve that interest." *Bernstein*, 814 F.3d at 144 (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

In general, applications to seal should be "carefully and skeptically review[ed] ... to insure that there really is an extraordinary circumstance or compelling need" to seal the documents from public access. *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994).

**Discussion**

The information and documents that Clear Street seeks to maintain under seal were included in testimony, exhibits, or briefing submitted by the parties in connection with Plaintiffs' motion for emergency relief. In other words, the material was submitted either in support of or in opposition to a significant merits-based motion currently pending before the Court. As such, that material is judicial in nature, to which the presumption of access attaches. *Coach IP Holdings, LLC v. ACS Group Acquisitions LLC,* No. 23-CV-

10612, 2024 WL 3965936, at \*1 (S.D.N.Y. Aug. 27, 2024) ("exhibits to motion for a temporary restraining order and preliminary injunction are judicial documents"); *Grant v. Lamont*, No. 3:22-CV-1223, 2023 WL 6958763, at \*3 (D. Conn. Oct. 20, 2023) ("The issuance of a preliminary injunction is an exercise of the court's Article III powers, and therefore submissions to the court to aid in its adjudication of a motion for preliminary injunction are clearly judicial documents").   That presumption remains regardless of whether the Court relies on or refers to any of that information in its decision.  *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019) ("the proper inquiry is whether the documents are relevant to the performance of the judicial function, not whether they were relied upon").

The weight of the presumption here is strong.  "Although a motion for a preliminary injunction is nondispositive, such motions typically (and in this case) require a court to address the merits of a case." *Alcon Vision, LLC v. Lens.com*, No. 18-CV-0407, 2020 WL 3791865, at \*5 (E.D.N.Y. July 7, 2020) (citing *North American Soccer League*, *LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32, 38-45 (2d Cir. 2018)).  Accordingly, "[d]ocuments and materials provided to aid in the adjudication of a motion for a temporary restraining order or preliminary injunction are judicial documents entitled to the highest presumption of access." *De Kafati v. Kafati Kafati*, No. 22-CV-9906, 2022 WL 17552457, at \*1 (S.D.N.Y. Dec. 9, 2022); *Boothbay Absolute Return Strategies, LP v. Belgische Scheepvaartmaatschappij-Compagnie Maritime Belge SA*, No. 24-CV-1445, 2024 WL 1097128, at \*8 (S.D.N.Y. Mar. 13, 2024) (same); *see also Securities & Exchange Commission v. Ripple Labs, Inc.*, No. 20-CV-10832 (AT), 2022 WL 329211, at \*1 (S.D.N.Y. Feb. 3, 2022) ("the presumption of public access is at its highest when the material is relevant to a court's decision on a dispositive motion").

The only competing interest advanced by Clear Street is its desire to protect commercially sensitive business information.  "Courts in this District routinely permit parties to seal or redact commercially sensitive information to protect confidential business interests and financial information."  *IBM Corp. v. Micro Focus (US), Inc.*, No. 22-CV-9910, 2024 WL 343265, at *1 (S.D.N.Y. Jan. 30, 2024); *see, e.g.*, *Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*, 97 F. Supp.3d 485, 511 (S.D.N.Y. 2015) (sealing "specific business information and strategies, which, if revealed, 'may provide valuable insights into a company's current business practices that a competitor would seek to exploit'") (quoting *Encyclopedia Brown Productions, Ltd. v. Home Box Office, Inc.*, 26 F. Supp.2d 606, 614 (S.D.N.Y. 1998)).

However, "protection is far from automatic."  *Resnick v. Flaherman*, No. 26-CV-1171, 2026 WL 575415, at *2 (S.D.N.Y. Mar. 2, 2026) (citing *New York v. Actavis, PLC*, No. 14-CV-7473, 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014)); *see also In re Parmalat Securities Litigation*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) ("the fact that business documents are secret or that their disclosure might result in adverse publicity does not automatically warrant a protective order").  And, "'conclusory statements that documents contain confidential business information' are insufficient to justify sealing."  *Ripple Labs, Inc.*, 2022 WL 329211, at *1 (quoting *United States v. Wells Fargo Bank, N.A.*, No. 12-CV-7527, 2015 WL 3999074, at *4 (S.D.N.Y. June 30, 2015)).

With these findings and principles in mind, the Court turns to each of the subjects at issue to determine if Clear Street's asserted competing interest outweighs the strong presumption of public access to that material.

1.      **Exhibits A and B to Clear Street's initial sealing request at Dkt. 80. Exhibit A is Clear Street's more detailed letter request, and Exhibit B is Plaintiffs' demand letters to Clear Street dated October 3 and 4, 2025.**  The sensitive information at issue in these documents already has been unsealed (specifically, information about Clear Street's efforts toward an initial public offering), or is encompassed by the other categories of information discussed herein.  Accordingly, Exhibits A and B to Dkt. 80 may be sealed, if at all, only to the extent other requests to seal below are granted.

2.      **Hearing testimony about the dollar amounts of Clear Street's overall business and its derivatives business, and the percentage of the former composed of the latter.**  Clear Street asserts that this information reveals "internal information about the Company's capital allocation, business mix, revenue concentration, counterparty exposures, and strategic growth priorities," which "would provide competitors, counterparties, and industry participants with insight into Clear Street's market position and risk profile in a way that could be commercially harmful."  (Dkt. 80 Ex. A at 4.)  According to Clear Street, "[t]hese metrics are not publicly disclosed anywhere."  (*Id.*)  Plaintiffs, however, assert that information about "Clear Street's positions is … not confidential in any meaningful sense," because as a regulated exchange-traded fund, "Clear Street must disclose its holdings daily … making it straightforward for industry participants to deduce at least the majority, if not all of these positions."  (Dkt. 82 at 4-5.)

Plaintiffs appear to be correct.  According to one financial information website, for example, Clear Street Derivatives disclosed in their SEC filings that it had "35 total

holdings" with a portfolio value of $12,397,824."[4]  Clear Street Derivatives also disclosed the names of its "top holdings" as well the names of its "new positions," and provided data sufficient for the site to provide a "Top 100 Holdings Heatmap."  (*Id.*)  Drilling down on the publicly disclosed data further, the same site reported changes in portfolio allocation for specific holdings.  (*Id.*)  Further, Clear Street touts on its website, among other total business data, that it has approximately $16 billion in customer balances and over 700 institutional clients, and trades approximately 550 million shares worth $28.4 billion (notional value) per day.[5]  The Court is not persuaded by Clear Street's conclusory statements regarding the secrecy of the total dollar amount of its overall and derivative business, or their size relative to each other, and finds that Clear Street has not demonstrated a competing interest that outweighs the strong presumption of public access.  This request to seal is DENIED.

3.    **Hearing testimony about the number of Clear Street's clients.**  Clear Street also fails to offer any concrete explanation, beyond the most conclusory statements, of how disclosure of the total number of its clients poses any substantive competitive harm, and certainly not to the degree that would overcome the strong presumption of public access.  (*See* Dkt. 80 Ex. A at 4 (asserting that "[k]nowledge of the client count would give competitors insight into Clear Street's growth, stability, and commercial strategy, and could be used to target its client relationships" and "could also affect negotiations with … counterparties who may adjust their evaluation of the

---

[4] *Clear Street Derivatives LLC Portfolio Holdings*, FINTEL, https://fintel.io/i/clear-street-derivatives-llc5984 (last visited May 14, 2026).

[5] CLEAR STREET, https://www.clearstreet.io/ (last visited May 14, 2026).

Company's leverage or financial profile based on that information").)  The balance might be different if the information identified Clear Street's clients, but that is not the scenario presented here; and, as discussed below, the identities of Clear Street's top clients are publicly disclosed.  *Cf. Oliver Wyman, Inc. v. Eielson*, 282 F. Supp.3d 684, 707 (S.D.N.Y. 2017) (granting sealing of lists identifying current and prospective clients); *Cohen v. Gerson Lehrman Group, Inc.*, No. 09-CV-4352, 2011 WL 4336679, at *2 (S.D.N.Y. Sept. 15, 2011) (sealing is justified when "the clients' identities have no bearing on th[e] case"). This request to seal is DENIED.

4.    **The compensation paid to Plaintiffs and other Clear Street employees as mentioned at the Hearing; paragraph 22 of the December 15, 2025 Zivkovic Declaration; and Exhibit A of the December 6, 2025 Batanjany Declaration.**  Courts often permit sealing employee compensation information, characterizing it as "sensitive personal information," particularly where the compensation of non-parties is at issue. *See, e.g.*, *Statoil (Nigeria) Ltd. v. Nigerian National Petroleum Corp.*, No. 18-CV-2392, 2020 WL 3170566, at *2 (S.D.N.Y. June 15, 2020) ("redaction of this salary information vindicates the privacy interest these non-parties have in sensitive personal information that outweighs the public's interest in disclosure") (quoting *Oliver Wyman*, 282 F. Supp.3d at 706); *see also Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp.3d 152, 155-56 (S.D.N.Y. 2015) ("personal information of current and former employees, including ... compensation" is the "type of information [that] … overcomes the presumption of public disclosure") (internal quotation marks omitted).

But where, as here, plaintiffs are former employees who do ***not*** object to disclosure of their own previous compensation, the concern for disclosing personal information is

9

eliminated, and disclosure is appropriate.  *See Perez v. Jupada Enterprises, Inc.*, No. 10-CV-3118, 2011 WL 501601, at *3 (S.D.N.Y. Feb. 14, 2011) (ruling that the Defendants' proposed protective order "should not issue to the extent that it would allow Defendants to designate as confidential Plaintiffs' own personnel files and compensation information").  Indeed, employees have the right to disclose their compensation information.  *See National Labor Relations Board v. Vanguard Tours, Inc.*, 981 F.2d 62, 66-67 (2d Cir. 1992) (finding that an employer's "rule prohibiting employees from making statements concerning wages [and] hours … was an unfair labor practice even absent evidence of enforcement").  Clear Street asserts that revealing Plaintiffs' compensation information "would cause commercial and strategic harm if publicly released," but offers nothing specific as support beyond that impermissibly conclusory statement.  (*See* Dkt. 109 at 6.)

Accordingly, the request to seal compensation information is GRANTED with respect to non-party present and former employees, but is DENIED with respect to Plaintiffs' compensation information when they were at Clear Street.

### 5.    Hearing exhibits 42, 43, and 43A in their entirety.

Clear Street introduced Exhibits 42, 43, and 43a during the second day of the hearing.  Two of those exhibits (43 and 43a) are email exchanges between one or more of the Plaintiffs and Clear Street employees who had contemplated leaving Clear Street to join Hidden Road, but ultimately decided not to do so.  The third exhibit (42) is an email exchange involving the same group and an employee of Hidden Road.  The presumption of public access is particularly strong with respect to these three documents.  They form a critical body of evidence on which Clear Street relies to demonstrate coordinated

conduct by the Plaintiffs – conduct that Clear Street contends violated their employment contracts and is an equitable consideration weighing against entry of a preliminary injunction.  (*See* Tr. 362-64, 378-92.)

Clear Street has not shown that the three email chains, whether considered separately or together, contain information that is proprietary, confidential, or competitively sensitive to such an extent that outweighs the strong presumption in public access.  The Court addresses the Exhibits in reverse order to reflect their chronological sequence.

Exhibit 43a is an email in which Travers, while still working for Clear Street, set forth an outline of topics and questions to address with Hidden Road.  The outline is comprised of high-level, generic information.  The entries largely reflect questions to determine Hidden Road's capabilities and the extent to which it can support a swap-trading operation.  Clear Street fails to specifically identify any information in the document that is proprietary to it.

Exhibit 43 is a discussion about a hypothetical portfolio that the departing employees could build if they joined Hidden Road.  (*See* Dec. 29, 2025 Travers Decl. ¶ 5 at Dkt. 114.)  The exchange includes a chart of that hypothetical portfolio.  The chart includes company tickers (i.e., abbreviations of particular clients), potential market value, financing revenue, and "net spread" percentage, which is effectively a pricing figure. Clear Street asserts that its net spread pricing was "developed based on specific client knowledge and complex internal Clear Street analysis."  (DiBacco Decl. ¶ 92.)  Plaintiff Cory Solomon testified that he thinks that Clear Street's spreads and positions "should not be known outside of our walls."  (Tr. 121.)  Clear Street admits, however, that the net

spreads included in the chart are not its actual net spreads, even if they were selected by Plaintiffs to be competitive with its net spreads and "mimic its pricing at the time." (*Id.* at 120-21.)   Moreover, Plaintiffs have provided testimony and documentary examples showing that Clear Street net spread pricing data can be compiled from publicly available sources.   (Dec. 29, 2025 Travers Decl. ¶¶ 6-15 and Ex. A; *see also* Dkt. 113 at 5-6 ("anyone within the securities industry can access the same data … used to create the chart at issue given the information is publicly available").)   Clear Street has not demonstrated otherwise and has not shown that Exhibit 43 contains any information presenting a competing interest sufficient to outweigh the interest in public access.

Clear Street similarly has failed to demonstrate that Exhibit 42 contains such information.   That email exchange with a Hidden Road employee reflects high level, generic topics.   It discloses no secrets, and terminology such as "tail hedge policy" is a well-known "standard practice across all securities-based swap dealers."  (Tr. 390-91.)

Faced with the benign nature of the information in each exhibit, Clear Street resorts to arguing that the three exhibits in aggregate provide "operational knowledge that would give a competitor a significant and unfair advantage" and a "meaningful head start."  (Dkt. 109 at 2-3.)   The Court agrees that a collective compilation of information can be proprietary.   But the validity of the theory does not help Clear Street.   The three exhibits reflect hypothetical scenarios and high-level conceptual information commonly known in the swaps industry.  It is not as if the three documents each contain just a few ingredients of a secret sauce that separately reveal nothing, but taken together provide a competitor with the complete recipe.   Nor does it matter that there may be only a few competitors in the non-bank swap trading industry, as Clear Street argues.    Providing high-level

12

conceptual information and hypothetical scenarios to an entity that does not already have that information or capability will of course provide an advantage to that entity. But there is nothing unfair about it.

The Court has reviewed the testimony that Clear Street cites in support of sealing the three exhibits. None of the testimony persuades the Court that the presumption of public access is overcome. Most of the testimony is conclusory or concedes the general, high-level nature of the information. For instance, Andrew Weg states "even though some of the concepts discussed [in the three exhibits] might be generally known in the industry, the specific way Clear Street applies it, measures it, or uses it in pricing and risk management, which is reflected in these documents, is not publicly available." (Dec. 10, 2025 Weg Decl. ¶ 33 at Dkt. 103-23.) Weg does not identify what in any of the documents actually reflects any specific way that Clear Street does anything. Adam Glazer characterizes the information as merely representing a "general infrastructure and framework"; tickers or market value that the employees moving to Hidden Road "intended to compete for from Clear Street"; and "explain[ing] how the swaps business worked." (Dec. 12, 2025 Glazer Decl. ¶¶ 28, 30-31 at Dkt. 103-20.) John DiBacco concedes that the agenda items listed in Exhibits 43 and 43a "reflect a basic understanding of the swap business," that "the items themselves are not proprietary in isolation" and are concepts that "experienced SBSD personnel would know need to be discussed to set up a swaps business." (DiBacco Decl. ¶ 83.) While such information may provide an advantage to someone who does not already know about the swaps business, that does not make the information confidential or otherwise worthy of sealing. DiBacco similarly acknowledges that Exhibit 43's "data, including ticker selection, spreads, and revenue modeling …

13

appear to have been obtained using Clear Street resources such as Bloomberg terminals and internal software tools." (*Id.* ¶ 88.) In other words, the information was collected from publicly available sources even if the means of sourcing it was internal hardware and software. Finally, Clear Street's in-house attorney Ken Sicklick testified at the Hearing that it was his "impression" that information in Exhibit 43 was confidential, but he did not identify anything specific or explain what his impression was based on. (Tr. 438.)

Because Clear Street has not satisfied its burden to overcome the strong presumption of public access, the request to seal Exhibits 42, 43, and 43a is DENIED.

**6.      Paragraph 92 of the December 11, 2025 DiBacco Declaration attesting to "net spread" percentage pricing data.** As discussed above, Clear Street's pricing data is publicly available, and the net spread data in Exhibit 43 is not Clear Street's actual net spread data. Paragraph 92 of the DiBacco Declaration also does not disclose Clear Street's actual net spread data. Clear Street has not demonstrated a competing interest that outweighs the presumption of public access. The request to seal is DENIED.

**7.      Financial terms of service as set forth in Clear Street client service agreements at Exhibit 54 and Exhibit A of the December 6, 2025 Travers Declaration.** The documents at issue date back to 2017, and Clear Street has not explained beyond impermissibly conclusory statements how such stale information poses competitive harm sufficient to outweigh the strong presumption of public access. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, No. 14-MC-2542, 2023 WL 196134, at *4 (S.D.N.Y. Jan. 17, 2023) ("the older the information is, the less appropriate it is to seal that information"); *see also Alcon Vision*, 2020 WL 3791865, at *8 (denying sealing, characterizing the information at issue as stale, and explaining that

plaintiff "has not explained how the disclosure of information that relates to business strategies that were formulated many years ago would result in any competitive harm"). The request to seal Exhibit 54 and Exhibit A of the December 6, 2025 Travers Declaration is DENIED.

      **8.**      **Testimony about the dollar amount of Clear Street Derivatives' position, capital, and margin-stress as set forth in paragraph 3 of the December 6, 2025 Travers Declaration.** The passage in question addresses conditions in December 2024, when Clear Street Derivatives was concerned about an intraday margin call and whether its derivatives business had sufficient capital to meet it. Travers gave a theoretical example, with reference to the amount of Clear Street Derivatives' position and the amount of collateral call that would have exhausted Clear Street Derivatives' capital at that point in time. As Plaintiffs point out, the information sought to be sealed pertains to a point in time *prior* to events that materially changed Clear Street Derivatives' position. As a result, the information at issue is stale, and, other than conclusory assertion of potential harm from disclosure, Clear Street has not demonstrated any interest that outweighs the strong presumption of public access.[6] The request to seal this information is DENIED.

---

[6] Plaintiffs additionally argue that because Travers testified to the same information in open court before the Court granted conditional sealing of the transcript for purposes of this motion, the information can no longer be properly sealed. (Dkt. 113 at 9.) In some situations, testimony in open court may preclude later sealing, but not always. *See Theallet v. H&M Hennes & Mauritz, L.P*., No. 1:20-CV-02212, 2020 WL 4194898, at *1 n.1 (S.D.N.Y. July 20, 2020) (noting that "[w]hile the figure was already disclosed in open court, that does not itself prevent sealing the transcript"); *see also Newsday*, 730 F.3d at 165 ("The transcript of a proceeding is so closely related to the ability to attend the proceeding itself that maintaining secrecy is appropriate only if closing the courtroom was appropriate"). Given the facts here, the Cout does not base its ruling on Plaintiffs' additional argument.

9.      **A telephone number and private home and email addresses in Exhibit 52.** The parties agree that this information should be sealed.  The privacy interest of the individual outweighs the strong presumption of access, particularly as there is nothing about the personal address and phone information of the individual identified in the document that is relevant to the Court's consideration.  *See Cantinieri v. Verisk Analytics, Inc.*, No. 21-CV-6911, 2024 WL 759317, at *4 (E.D.N.Y. Feb. 23, 2024) (finding that "documents containing Plaintiff's or other third-parties' personal information" should be sealed and "weighs heavily in the Court's balancing against the presumption of access").  The request to maintain this information under seal is GRANTED.

10.      **Clear Street's brief, at Dkts. 145 (sealed in full) and 159 (redacted in part), in opposition to Plaintiffs' motion for civil contempt and sanctions for violating the Court's temporary restraining order.**  Clear Street filed this redacted document on April 14, 2026, having previously filed the entire document under seal on February 19, 2026.  (Dkt. 145.)  The redactions made by Clear Street are a variety of short quotations from the Hearing transcript.  None of those redactions, however, are encompassed by any of the earlier subjects for which Clear Street sought to seal.  That matters, because on November 25, 2025, the Court cautioned the parties that any redaction would be appropriate only if it was related to Clear Street's then non-public initial public offering, or to information that "is the subject of Defendants' pending motion to seal portions of the transcript."  (Dkt. 161 Ex. B at 4.)  In any event, none of the quoted material discloses sensitive, commercial, financial, or proprietary information that would even qualify as a competing interest meriting consideration.  Rather, the redactions consist of general characterizations and references such as, for example, "a little intense,"

"numerous conversations," and "further adverse action."  (Dkt. 160 Ex. A at 4 n.4, 17, 24.)
The request to maintain any portion of the brief filed at Dkts. 145 and 159 under seal is
DENIED.

### Conclusion

As set forth above, Clear Street's motion to seal is DENIED in part and GRANTED
in part.  To the extent not discussed above, the Court has considered the parties'
arguments and determined them to be either moot or without merit.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 80.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: May 15, 2026
        New York, New York

Copies transmitted this date to all counsel of record.

17