USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/14/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL BATANJANY, CORY SOLOMON, PATRICK TRAVERS, and JORDAN BRODSKY,

Plaintiffs,

-against-

CLEAR STREET MANAGEMENT LLC, CLEAR STREET DERIVATIVES LLC, CLEAR HOLDINGS LLC, CLEAR STREET LLC, CLEAR STREET HOLDINGS LLC, CLEAR STREET GROUP INC., URIEL EPHRAIM COHEN, and KENNETH ARI SICKLICK,

Defendants.

25 Civ. 8420 (AT)

**ORDER**

ANALISA TORRES, District Judge:

This action arises from an employment dispute between four licensed broker-dealers and their former employer, Clear Street,[1] a financial technology and investment firm. *See generally* Compl., ECF No. 1. On June 5, 2026, the Court granted Plaintiffs' motion for a preliminary injunction pending arbitration, ordering Defendants to amend the Form U-5s filed with the Financial Industry Regulatory Authority to reflect that Plaintiffs voluntarily resigned from their positions and enjoining Defendants from taking further adverse action against Plaintiffs during the pendency of arbitration. *See* PI Order at 22–23, ECF No. 173.

Before the Court are: (1) Plaintiffs' motion for sanctions and an order holding defense counsel, Rick Ostrove, in civil contempt for violating the Court's sequestration order ("contempt motion"), *see* Contempt Mem., ECF No. 134; (2) Plaintiffs' motion for sanctions with respect to Defendants' filing of the Form U-5s and purported witness tampering ("first motion for sanctions"), *see* Sanctions I Mem., ECF No. 135; and (3) Plaintiffs' motion for sanctions and an

[1] The Court refers to Defendants Clear Street Management LLC, Clear Street Derivatives LLC, Clear Holdings LCC, Clear Street LLC, Clear Street Holdings LLC, and Clear Street Group Inc. collectively as "Clear Street."

order holding Defendants in civil contempt for violating the Court's November 13, 2025 TRO by filing a frivolous state court lawsuit ("second motion for contempt and sanctions"), *see* Sanctions II Mem., ECF No. 137. For the reasons stated below, Plaintiffs' motions are denied.

## BACKGROUND

### I. Factual Background

The Court held a full-day hearing on Plaintiffs' motion for a preliminary injunction on November 13, 2025, and a half-day hearing on November 20, 2025. On November 13, the Court entered a temporary restraining order ("TRO") on consent, enjoining Defendants from taking adverse action against Plaintiffs but not ordering Defendants to amend the Form U-5s. *See* 11/13 Hr'g Tr. at 308:9–19, ECF No. 93-6; 11/20 Hr'g Tr. at 491:5–7, ECF No. 93-7. On June 5, 2026, the Court granted Plaintiffs' motion for a preliminary injunction. *See* PI Order.

#### A. Filing the Form U-5s

The Court assumes familiarity with the facts outlined in the Court's preliminary injunction order pertaining to Defendants' filing of the U-5s and, therefore, does not repeat them here. *See* PI Order at 3–12.

#### B. Ostrove Texting Curtis Allemang

At the start of the November 13 hearing, Courtney Rockett, former counsel for Plaintiffs, moved to exclude all witnesses from the courtroom until the witness testified. *See* 11/13 Hr'g Tr. at 9:7–11 ("Your Honor, we had indicated that we intended to file a motion to exclude all witnesses from the courtroom until they testify unless they are a named party."). The Court granted the motion. *See id.* ("That is totally appropriate. The motion is granted.").

Later that afternoon, during recross examination, Rick Ostrove, counsel for Defendants, asked Patrick Travers how valuable Curtis Allemang and Adam Glazer were as employees, to

which Travers responded that they were "fair." *See* 11/13 Hr'g Tr. at 253:19–254:11. At 3:51 p.m., Ostrove texted Allemang about Travers' testimony. *See* Pronley Decl. Ex. 1 at 3, ECF No. 129-2. Specifically, Ostrove said: "When i asked [Travers] if u were a valuable employee, ur buddy . . . wouldn't say yes and said that u were 'fair' . . . Same about Adam . . . Andy on now." *Id.* Based on the text message timestamp and the hearing transcript, Ostrove sent that message to Allemang as soon as Ostrove finished Travers' recross and was calling the defense's first witness, Andy Volz. *See* 11/13 Hr'g Tr. at 255:24–256:6 (noting that Travers' recross ended at 3:50 p.m.).

Allemang informed the Court of these text messages on November 20 during cross examination. *See* 11/20 Hr'g Tr. at 416:10–417:19, ECF No. 93-7. The Court then questioned Allemang to elicit further information regarding a potential violation of the Court's order, *see id.*, and issued an order from the bench directing Allemang to produce all such communications for Ostrove so that Ostrove could provide them to the Court, *see id.* at 417:24–418:5.

On November 24, 2025, Ostrove furnished screenshots of his text exchange with Allemang and apologized to both Plaintiffs and the Court via email. *See* Pronley Decl. Ex 1. at 1. On January 27, 2026, Plaintiffs filed a civil contempt motion against Ostrove for violating the Court's sequestration order. *See* Contempt Mem.

The Court's sequestration is not the only relevant order, however. On November 12, 2025, Ostrove signed the conditions of the "Electronic Device Form for the Southern District of New York," which permits an individual to have electronic devices in the courtroom. *See* Signed Electronic Device Form (submitted to the Court). In signing the form, Ostrove agreed to "comply in all respects with the restrictions and obligations set forth in Standing Order M10-468." *Id.* Further, under Rule VI of the undersigned's Individual Practices in Civil Cases,

"[a]ttorneys' use of mobile phones and other personal electronic devices within the Courthouse and its environs is governed by Standing Order M10-468." Section (n) of Standing Order M10-468 (the "Standing Order") states that "[n]o Personal Electronic Device or General Purpose Computing Device may be used by anyone in any courtroom for communicating with other individuals or entities without the prior express permission of the presiding judge. For the avoidance of doubt . . . text or instant messaging may not be conducted in a courtroom without the prior express permission of the presiding judge." Before the November 13 hearing began, the undersigned's law clerk distributed copies of the Standing Order to both Plaintiffs' and defense counsels' tables.

C. Hedge Fund Alert Article

Travers testified before the Court on November 13, 2025. Travers states in a sworn declaration that on November 18, 2025, a reporter for the industry publication Hedge Fund Alert called him, but he did not answer and let it go to voicemail. Travers Decl. ¶ 53, ECF No. 93-2. Andy Volz then phoned Travers "regarding an article to be published in Hedge Fund Alert about this case." *Id.* ¶ 54. During the call, Volz stated that Clear Street would not settle with Plaintiffs unless Travers called the reporter, told the reporter that the parties were "close to settlement," and informed him that Plaintiffs were "planning to 'pull back' on some of the testimony [they] gave in Court." *Id.* ¶¶ 54–55. According to Travers, Volz "pleaded with [him] to help Clear Street prevent the upcoming . . . article." *Id.* ¶ 56. Volz called Travers again that evening, asking him to speak with Uri Cohen; Travers agreed, and Cohen then "told [Travers] that any settlement of Plaintiffs' claims in this matter depended on [him] stopping the Hedge Fund Alert article from being published." *Id.* ¶¶ 57–58. Travers further states that Cohen "asked [Travers] to call [the reporter] and tell him that some of the testimony Plaintiffs gave in court was

incorrect" or "exaggerated." *Id.* ¶ 59; *see also* 11/20 Hr'g Tr. at 481:17–482:8. The article was published on November 19, and, at the November 20 hearing, Travers did not retract his November 13 testimony. *See id.*

D. New York State Litigation

At the close of the November 13, 2025 hearing, the Court entered a TRO on consent, enjoining Defendants from taking adverse action against Plaintiffs pending resolution of Plaintiffs' preliminary injunction motion. *See* 11/13 Hr'g Tr. at 308:9–19.

On December 9, 2025, months after Travers purportedly breached his restrictive covenants and weeks after the entry of the TRO, Defendants sought this Court's permission to take legal action against Plaintiffs "to protect [Clear Street's] confidential, proprietary and trade secret information and to enforce Plaintiffs' employment agreements." ECF No. 98 at 2. The next day, without opining on the nature of Defendants' proposed lawsuit, the Court clarified that the TRO only enjoined Defendants "from taking legal action without a reasonable basis in law or fact against Plaintiffs." ECF No. 102 ¶ 4; *see also Kim v. Lee*, 576 F. Supp. 3d 14, 31 (S.D.N.Y. 2021) ("The courts in this Circuit have held that the filing of 'baseless claims or lawsuits designed to deter claimants from seeking legal redress constitute[s] impermissibly adverse retaliatory action[].'" (citation omitted)).

On December 15, 2025, the same day Travers' and Brodsky's three-month non-competes expired, Defendants brought a New York Supreme Court, Commercial Division action against Travers and entities and executives from Hidden Road (Plaintiffs' new employer), seeking $150 million in damages and a TRO and preliminary injunction to prevent Plaintiffs from beginning work at Hidden Road. *See Clear Street LLC et al. v. Hidden Road Partners LP et al.*, Index No. 656452/2025 (N.Y. Sup. Ct. N.Y. Cnty. Dec. 17, 2025); Sanctions II Mem. at 3–4. The

Honorable Andrew Borrock held oral argument on December 16 and 17, 2025. *See* Sanctions II Mem. at 4. On December 17, 2025, Justice Borrock denied Clear Street's motion for a TRO, observing, among other things, that "[t]he relief sought is plainly overbroad," that the Clear Street entities "lack adequate explanation as to why they waited for close to two months and until the end of the expiration of the covenant . . . to come to Court," that the issues may need to be arbitrated, and that the dispute presents "significant factual disagreements" such that preliminary injunctive relief is unwarranted. NYS TRO Decision at 2, 4–6, ECF No. 105-1. Plaintiffs characterize the New York state action as "duplicative, vexatious, and utterly spurious litigation . . . to further retaliate against Plaintiffs." Sanctions II Mem. at 1–2.

On May 11, 2026, on motion of Travers and the Hidden Road defendants, the New York state action was stayed because "the parties agree that the merits of this action must be decided in arbitration." NYS Stay Decision, ECF No. 163-1.

## DISCUSSION

### I. Legal Standard

#### A. Sanctions in General

A court has the inherent power to sanction a party "for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45 (1991). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44. Sanctions should be designed to: "(1) deter parties from engaging in [misconduct]; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in" absent the opposing party's misconduct. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (internal quotation marks omitted). The imposition of sanctions, as well as the determination of the appropriate type of

sanction, is left to the discretion of the district court. *See, e.g.*, *Shaffer v. RWP Group, Inc.*, 169 F.R.D. 19, 24 (E.D.N.Y 1996).

B. Civil Contempt

"The imposition of civil contempt sanctions [serves] dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004). The decision to hold a party in contempt is within the discretion of the district court. *See Dunn v. New York State Dep't of Labor*, 47 F.3d 485, 490 (2d Cir. 1995). "A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d. Cir. 1995). The movant must establish that: "(1) the order that the [alleged] contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the [alleged] contemnor has not diligently attempted to comply in a reasonable manner." *Id.*

II. Analysis

A. Contempt Motion (Ostrove's Texts to Allemang)

Civil contempt is not warranted for Ostrove's purported violation of the Court's sequestration order. The Court's November 13 sequestration order granted Plaintiffs' request to restrict non-party witnesses from the courtroom at the start of the preliminary injunction hearing. *See* 11/13 Hr'g Tr. at 9:7–11. This order was consistent with Federal Rule of Evidence 615(a), which "order[s] witnesses excluded from the courtroom so that they cannot hear other witness' testimony." Without more, an order under 615(a) "operates only to exclude witnesses from the courtroom" and does not "prohibit disclosure of trial testimony to witnesses who are excluded

from the courtroom." F.R.E. 615(b). Because the Court's sequestration order did not specify that trial testimony could not be disclosed to witnesses excluded from the courtroom, the Court does not find that the Court's order is "clear and unambiguous" in proscribing Ostrove's conduct, or that his conduct is "clear and convincing" "proof of noncompliance." *King*, 65 F.3d at 1058. Therefore, even if Ostrove arguably violated the spirit of the order by providing a nonparty witness with a real-time update and appears to have attempted to bias Allemang against Travers, he should not be held in contempt of court for a violation of the sequestration order.

Ostrove's violation of the SDNY Standing Order, however, does meet the standard for civil contempt.[2] First, the Standing Order was clear and unambiguous, providing that "text or instant messaging may not be conducted in a courtroom without the prior express permission of the presiding judge." Standing Order § (n). The Standing Order also warns that "[a]ny violation of this Standing Order, or the individual practice or rule of any individual judge, may result in sanctions including, but not limited to, fines, temporary confiscation of a device used in connection with such violation and/or forfeiture of the privileges granted by this Standing Order." *Id.* § (d). The day before the November 13 hearing, Ostrove signed the SDNY Electronic Device Form, which explicitly states, "[b]ringing any authorized Device(s) into the Courthouse or its Environs constitutes a certification by the attorney that he or she will comply in all respects with the restrictions and obligations set forth in Standing Order M10-468, as Revised." Signed Electronic Device Form. In addition, court staff placed physical copies of the Standing Order on Plaintiffs' and defense counsel tables at the start of both hearings, and the undersigned's individual rules require compliance with the Standing Order, *see* Rule VI, Individual Practices in Civil Cases. Regardless of whether Ostrove personally received physical

[2] The Court notes that Plaintiffs' opening brief was based on the Court's sequestration order, not the Standing Order. *See generally* Contempt Mem.

copies of the Standing Order, he assumed the responsibility to know about and follow the Court's Standing Order, as well as the undersigned's Individual Practices, when the Court granted him permission to bring his electronic devices to the courtroom.

Second, the proof of Ostrove's noncompliance is clear and convincing. Based on the hearing transcript and the screenshots of Ostrove's messages, it is clear that Ostrove texted Allemang while in the courtroom and immediately after Travers' testimony. The transcript indicates that Ostrove finished questioning Travers at about 3:50 p.m. and then called his first witness. *See* 11/13 Hr'g Tr. at 255:20–25, 256:1–6. Screenshots of the text messages show that he texted Allemang at 3:51 p.m., right before Volz testified. Pronley Decl. Ex 1 at 3.

Third, Ostrove did not cure the violation with diligent, good-faith compliance with the Court rules, and, notably, his immediate response was not to take responsibility for his actions. During the November 20 hearing, after the Court asked Ostrove about these text messages, Ostrove stated he believed he sent the message "on a break" and that he "didn't think [the message] was a big deal." 11/20 Hr'g Tr. at 422:9–13. It is difficult to see how directly texting Allemang—an anticipated witness who had independent counsel and was one of Travers' friends and mentees—about what Travers thought about him was not a "big deal" in light of the importance of following court rules, the contentious nature of the preliminary injunction hearing, and the obvious effect that text message could have had on Allemang. Ostrove's declaration further suggests, remarkably, that the Court should not expect him to know about the Standing Order because he may have been in the bathroom when it was distributed. *See* Ostrove Decl. ¶¶ 3, 5, ECF No. 144. Apparently, despite signing the Electronic Device Form and agreeing to follow the Standing Order, and despite the undersigned's Individual Practices also requiring compliance with the Standing Order, Ostrove did not bother to inform himself of the Court's

rules, nor did he attempt to read the physical copy of the Standing Order that was placed on defense counsel's table in the courtroom. Ostrove could and should have taken these steps to avoid this violation.

However, the Court does not find that civil contempt or other sanctions are warranted for Ostrove's conduct. Civil contempt sanctions should be "remedial and compensatory, and not punitive." *Sunbeam Corp. v. Golden Rule Appliance Co.*, 252 F.2d 467, 469 (2d Cir. 1958). Based on Allemang's testimony at the hearing, and the Court's preliminary injunction decision in Plaintiffs' favor, the Court does not find that Plaintiffs were ultimately prejudiced from Ostrove's violation. Moreover, the violation does not appear to have been repeated, Ostrove was forthcoming with the Court about his communications with witnesses, and, within a week of the hearing, he accepted responsibility for his actions, emailing Plaintiffs and the Court an apology. *See, e.g.*, ECF No. 134-2 (email to Plaintiffs and the Court dated November 24, 2025). The Court is persuaded that based on this experience, Ostrove will be fully compliant with standing orders of the Court and a judge's individual rules in future cases.[3] Plaintiffs' motion for civil contempt is, therefore, denied.

B. First Motion for Sanctions (Filing the Form U-5s, Witness Tampering)

The Court has already held, at least on a preliminary basis, that Defendants filed the Form U-5s in retaliation for Plaintiffs' threat of litigation. *See generally* PI Order. The Court does not find that sanctions are warranted for filing the U-5s. Plaintiffs argue that Defendants filed the U-5s before they filed their lawsuit "for the purpose of circumventing this Court's authority and jurisdiction." Proposed Sanctions I Order at 1, ECF No. 135-3. But it is not

[3] Because the Court does not impose sanctions, it need not consider Clear Street's unclean hands argument based on (1) a purported conflicted concurrent representation of John DiBacco and Plaintiffs and (2) the alleged mischaracterization of redacted text on an exhibit. *See* Contempt Mem. Opp., ECF No. 143 at 15–22.

apparent how filing the Form U-5s after receiving notice of impending litigation but before Plaintiffs could file their motion for emergency relief deprives this Court of "jurisdiction" to rectify the purportedly retaliatory action. Because Plaintiffs are not prejudiced, and because Defendants' actions did not clearly abuse legal process, the Court declines to impose sanctions.

Plaintiffs also request sanctions because Defendants "attempt[ed] to improperly influence, coerce, or induce Plaintiffs to recant or alter sworn testimony in connection with proceedings before this Court," *id.*, referencing Volz' and Cohen's statements to Travers regarding the Hedge Fund Alert article. The Court denies this request.

"'[R]equests for sanctions following witness tampering are not common in federal court,' however, courts . . . have sanctioned witness tampering pursuant to a court's inherent power." *Riley v. City of New York*, No. 10 Civ. 2513, 2015 WL 541346, at *7 (E.D.N.Y. Feb. 10, 2015) (quoting *Harris v. SCA Rest. Corp.,* No. 09 Civ. 2212, 2014 WL 996249, at *4 (E.D.N.Y. Mar. 14, 2014)). The Court uses 18 U.S.C. § 1512—the criminal prohibition on witness tampering—as guidance. *See* Sanctions I Mem. at 14. Section 1512(b)(1) prohibits knowingly using intimidation, threats, or corruption to persuade or attempt to persuade a person with the intent to "influence, delay, or prevent [a person's] testimony . . . in an official proceeding." Even accepting Travers' account as true, Plaintiffs have not clearly shown any witness tampering in connection with an official proceeding. At most, Volz and Cohen conditioned settlement negotiations on a request that Travers make statements to a *journalist* about his testimony, not that Travers make certain statements to this Court or under oath. *See, e.g.*, Travers Decl. ¶¶ 54–59 (describing what Volz and Cohen asked him to tell a reporter); *see also Edmondson v. Raniere*, 751 F. Supp. 3d 136, 165–66 (E.D.N.Y. 2024) (holding that a threatening attorney letter directed to the media did not constitute witness tampering under 18 U.S.C. § 1512 because it was

not directed at witness testimony). Plaintiffs have cited no authority sanctioning similar conduct. *See generally* Sanctions I Mem.; Sanctions I Reply, ECF No. 152.[4] The Court, therefore, denies Plaintiffs' first motion for sanctions in its entirety.

C. Second Motion for Contempt and Sanctions (New York State Litigation)

Plaintiffs also move for sanctions and a civil contempt order finding that Defendants violated the Court's TRO by filing the state court action against Travers and Hidden Road entities. The Court denies this motion in its discretion, finding it premature. Although the Court notes the strikingly broad scope of relief sought in the state court action, the Court cannot conclude that Clear Street's lawsuit was legally or factually frivolous without adjudicating the merits of that dispute, which the Court declines to do given the procedural posture of this case. Plaintiffs cannot merely rely on Justice Borrock's denial of the state court TRO to prove that Defendants violated this Court's TRO because Justice Borrock did not make an adjudication on the merits or a finding of frivolousness. *See, e.g.*, *Kiseleva v. Greenspan*, No. 23 Civ. 9496, 2025 WL 3012188, at *2 (S.D.N.Y. Oct. 28, 2025) ("Plaintiff's failure to prevail in this action does not (and cannot) itself suggest that the lawsuit was frivolous."); *see also TapImmune, Inc. v. Gardner*, No. 14 Civ. 6087, 2015 WL 4111881, at *6 (S.D.N.Y. July 8, 2015) ("A court's decision that a party has not demonstrated a likelihood of success on the merits is not itself a decision on the merits."). Moreover, although Justice Borrock expressed concern over the scope of Clear Street's proposed injunction, he did not specifically find that the motion or claims lacked a legal or factual basis, and he noted that the merits of Clear Street's suit depended on

---

[4] Travers also states that since Plaintiffs commenced this action, he "has learned through contacts as Clear Street that Cohen has repeatedly threatened to personally sue [him] for billions of dollars in damages if Clear Street's upcoming IPO does not go as planned." Travers Decl. ¶ 20. Plaintiffs briefly reference this in connection with their arguments about witness tampering. Travers' statement, which neither contextualizes Cohen's statements nor indicates from whom or how Travers learned this information, does not show that Cohen's threatened lawsuit was an effort to influence Travers' testimony in this proceeding. Therefore, the Court finds no basis for sanctions.

highly contested facts. *See generally* NYS TRO Decision. Ultimately, Plaintiffs' instant motion for contempt and sanctions would require the Court to review Justice Borrock's decision *de novo* and relitigate the parties' state court dispute—all while arbitration proceedings raising substantially the same issues are ongoing. *See* ECF Nos. 126, 174 (reflecting the parties' agreement to arbitrate Plaintiffs' claims in this case); ECF No. 163-1 (stay of state court proceedings pending arbitration). The Court will not engage in a parallel, duplicative proceeding because doing so would risk inconsistent rulings and defeat the benefits of arbitration. Plaintiffs' second motion for contempt and sanctions is, therefore, denied without prejudice.

**CONCLUSION**

For the forgoing reasons, Plaintiffs' motions are each DENIED.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 129, 132, 134, and 136 and STAY this action pending arbitration proceedings. The parties are directed to notify the Court within **one week** of the conclusion of arbitration proceedings.

SO ORDERED.

Dated: September 14, 2026
New York, New York

ANALISA TORRES
United States District Judge